UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTER BURNETT,<br><br>                Petitioner,<br>v.<br><br>JAMES YATES, Warden,<br><br>                Respondent. | Case No. 09cv2682-MMA (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |

    This Report and Recommendation is submitted to United States District Judge Michael M. Anello pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

    On December 31, 2009, Petitioner, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a First Amended Petition for Writ of Habeas Corpus. Doc. No. 5 ("FAP"). Petitioner challenges a decision by the prison's senior disciplinary hearing officer finding him guilty of "delaying a peace officer in the performance of duties" and assessing him thirty days forfeiture of good time credits[1]. Id. Petitioner seeks restoration of the thirty days of credit and

---

[1] "Good time credit," as defined by 18 U.S.C. § 3624(b), is "[c]redit toward service of sentence for satisfactory behavior." Tablada v. Thomas, 533 F.3d 800, 803 (9th Cir. 2008) (quoting 18 U.S.C. § 3624(b)). Such credit may be awarded as follows:

    (1) ... a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the

expungement of the disciplinary conviction from his prison record.  Id.  On March 12, 2010, Respondent filed an answer requesting that the FAP be denied.  Doc. No. 8 ("Answer").  Petitioner filed a traverse on April 5, 2010.  Doc. No. 9 ("Traverse").

This Court has considered the above documents as well as the record as a whole.  Based thereon, and for the reasons set forth below, this Court **RECOMMENDS** that Petitioner's First Amended Petition for Writ of Habeas Corpus be **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Petitioner's Position

Petitioner alleges that on March 4, 2008, he was told to leave his electrical vocational training in Facility B of the prison and report back to his housing unit.  FAP at 6.  Upon arriving in the housing unit, he was told to pack his things and report to the program office, which he did.  Id.  There, Petitioner asserts that Correctional Officer Perdomo and Sergeant Trujillo laughed loudly and told him he was being moved to Facility D because he had filed too many citizen's complaints.  Id.  Petitioner responded by telling the officers they were violating his due process right to notice of the housing transfer and the procedural safeguards built into the prisoner classification process, but claims that he did not refuse to move to the new facility.  Id.  Thereafter, Petitioner was placed in administrative segregation and Sergeant Trujillo gave him a Rules Violation Report ("RVR") for delaying a peace officer in the performance of his duties.  Id.

During the RVR hearing on March 25, 2008, Petitioner explained to the senior hearing officer that the correctional officers initiated an adverse transfer without the prior notice required by prison rules and then falsely stated that Petitioner refused to move.[2]  Id. at 7.  The senior

---

prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.... [C]redit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

18 U.S.C. § 3624(b)(1).

[2]  Petitioner describes the transfer as "adverse" because he wished to complete vocational training in "electric," which he apparently could not do in Facility D.  FAP at 7.

hearing officer questioned two of the correctional officers who, according to Petitioner, both lied in their responses. Id.

**B.     The Rules Violation Report and Subsequent Administrative Review**

According to the RVR[3], when Petitioner was informed on March 4, 2008, that he was being rehoused, he stated "No. I refuse." Lodgment 2 at 1. As a result of his refusal, an officer placed Petitioner in administrative segregation. Id. Sergeant Trujillo, who is listed as the "reporting employee" on the RVR, explained that "[t]he Administrative Segregation placement process caused by Inmate BURNETT disrupted the daily operations and my duties as the Facility B Program Sergeant for approximately 35 minutes in order to resolve his disruptive behavior." Id.

As reported on the RVR, the following took place during the March 25, 2008 hearing:

**PLEA**: Inmate BURNETT plead **NOT GUILTY** and made the following statement: "According to Title 15, §3375(F1), I should have been given a 72 hour notice."

**WITNESSES**: Lieutenant G.N. Granish and Sergeant M. Trujillo. The following question was presented to Sergeant Trujillo:

Q: "Did he refuse at any time to be housed on Facility "D"?"
A: "Yes, inmate BURNETT stated, 'You might as well send me to the hole. I don't want to go to the D-Yard.'"

The following question was presented to Lieutenant Granish:

Q: "Why was inmate Burnett being rehoused on Facility "D"?"
A: "He was having problems with Sergeant Trujillo and three Officers. I was moving him by his request to keep him from being allegedly harassed by the three Officers and Sergeant Trujillo as well as to conduct an investigation into the validity of the complaint reported by inmate BURNETT.

No further questions were asked of the witnesses.

**FINDINGS**: Inmate BURNETT was found **GUILTY** as charged of violating California Code of Regulations, §3005, a Division "F" Offense; the specific charge of DELAYING A PEACE OFFICER IN THE PERFORMANCE OF DUTIES. The preponderance of evidence submitted and considered in reaching this finding substantiates the charge and supports the factors in the RVR.

The RVR by Correctional Sergeant M. Trujillo, stating in part: "Inmate BURNETT, V-352451, was escorted to the Facility "B" Program Office to be informed inmate

---

[3] Petitioner attached the RVR to his original petition (Doc. No. 1) and Respondent lodged a clearer copy together with his answer (Lodgment 2).

> BURNETT (sic) that a GA-154 Inmate/Transfer was generated indicating he was being rehoused. Upon being informed, inmate BURNETT stated that he was refusing to comply and complete the GA-154 process. At this point, I gave inmate BURNETT a direct order to complete the GA-154 process. Inmate BURNETT, stated, 'No, I refuse.' As the result of this refusal, inmate BURNETT was rehoused to Administrative Segregation. The Administrative Segregation placement process caused by inmate BURNETT disrupted the daily operations and my duties as the Facility B Program Sergeant for approximately 35 minutes in order to resolve his disruptive behavior."
>
> **DISPOSITION**: Assessed 30 days forfeiture of behavioral credits consistent with a Division "F" Offense.

Lodgment 2 at 2.

Petitioner appealed the decision through the prison's administrative appeal system. Lodgment 3. His appeal was denied at the Director's Level on September 25, 2008, thereby exhausting his administrative remedies.[4]  Id.

### C.   Collateral Review

On October 29, 2008, Petitioner sought collateral review of his disciplinary conviction and loss of credits in a California superior court. Lodgment 4. The superior court denied his petition on January 20, 2009. Lodgment 5. Petitioner then filed a habeas petition in the California Court of Appeal, Fourth District, Division 1, which that court denied on July 29, 2009. Lodgments 6 & 7. On August 25, 2009, Petitioner filed a habeas petition in the California Supreme Court. Lodgment 8. The petition was summarily denied without citation of authority on September 23, 2009. Lodgment 9.

On November 20, 2009, Petitioner filed a Petition for Writ of Habeas Corpus in this district. Doc. No. 1. After the district court dismissed his case with leave to amend, Petitioner filed the FAP presently being considered by the Court. Doc. No. 5.

### SCOPE OF REVIEW

Title 28 of the United States Code, section 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall

---

[4] Respondent admits in his answer that Petitioner exhausted his administrative remedies. Answer ¶ 4.

> entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Summary denials constitute adjudications on the merits. See Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002). Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). "[A] federal habeas court may not issue a writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . . Rather, that application must be *objectively unreasonable*." Id. at 75-76 (emphasis added) (internal quotation marks and citations

omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." Williams, 529 U.S. at 412.

Finally, habeas relief also is available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); Wood v. Allen, 130 S.Ct. 841, 845 (2010). A state court's decision will not be overturned on factual grounds unless this Court finds that the state court's factual determinations were objectively unreasonable in light of the evidence presented in state court. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable). This Court will presume that the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

Petitioner alleges his procedural due process rights were violated at the disciplinary hearing that resulted in a loss of good time credits. FAP[5] at 8, 12. More specifically, Petitioner contends that correctional officers manufactured the evidence used against him at the hearing by wrongfully initiating a transfer to another yard. Id. Respondent counters that Petitioner has failed to show that the state court decisions denying his claim were contrary to, or an unreasonable application of, clearly established federal law or that they were based on an unreasonable determination of the facts in light of the evidence presented. Resp't Mem. P. & A. Supp. Answer ("Resp't Mem.") at 3-4. Petitioner disputes this in his traverse. Pet'r Mem. P. & A. Supp. Traverse ("Traverse Mem.") at 1-2.[6]

---

[5] Petitioner also filed a memorandum of points and authorities in support of his FAC, with numerous exhibits attached. Doc. No. 6-1. However, a large portion of the memorandum and most of the exhibits pertain to another case pending in this district, which Petitioner references in a note attached to the memorandum. The Court declines to address the portions of the memorandum and the exhibits, that do not pertain to the allegations set forth in Petitioner's FAP.

[6] To the extent Petitioner alleges violations of due process rights arising under California law (see FAP at 7, Traverse Mem. at 1-3), Petitioner's claim is not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67 (1991) (mere error in the application of state law does not warrant federal habeas relief); Matylinsky v. Budge,

The California Supreme Court summarily denied Petitioner's due process claim, so this Court will "look through" the silent denial to the court of appeal's reasoned decision. Ylst, 501 U.S. at 804. The appellate court rejected Petitioner's argument that prison officials violated his due process rights, explaining:

> Burnett's arguments with respect to the disciplinary violation fail. "[P]rison disciplinary action will not be disturbed so long as 'some evidence' supports the action taken." (*In re Zepeda* (2006) 141 Cal.App.4th 1493, 1498, citing *Superintendent v. Hill* (1985) 472 U.S. 445, 455.) The "some evidence" standard is satisfied if there is "any evidence in the record that could support the conclusion reached by the disciplinary board"—it does not involve "examination of the entire record, independent assessment of the *credibility of witnesses,* or *weighing of the evidence.*" (*Superintendent v. Hill, supra*, at pp. 455-456, italics added.) Here, there is evidence in the record from the reporting employee that Burnett refused the transfer in response to the direct order to comply with the process, and his refusal caused the disruption of daily operations and employee duties in order to resolve the situation. Burnett's claims that he did not refuse to move, officers presented false testimony at his hearing, officers disrupted the daily operations of the prison by attempting the transfer him involuntarily and the like go to the credibility of the witnesses and weighing of evidence, which is beyond our purview.
>
> We reject Burnett's interpretation of the applicable regulations as strained. We add that the propriety of the transfer was not technically before the senior hearing officer or this court because a belief that the transfer was wrongful, however sincere, does not give Burnett a defense to the disciplinary action of delaying a peace officer in performing his duties. If Burnett wanted to challenge the move, his remedy was to comply with the officers who were attempting to transfer him and thereafter pursue an administrative grievance with respect to the transfer.

Lodgment 7 at 2.

As the court of appeal correctly noted, the clearly established federal law governing due process claims challenging prison disciplinary actions is set forth in <u>Superintendent, Mass. Corr. Inst., Walpole v. Hill</u>, 472 U.S. 445 (1985). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). In other words, while "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime," see <u>id.</u> at 555, his interest in due process "must be accommodated in the distinctive setting of a prison" in order

---

577 F.3d 1083, 1094 n.4 (9th Cir. 2009) (same). The only question before this Court is whether Petitioner's federal due process rights were violated.

to "prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens," see Hill, 472 U.S. at 454-55. When a prison disciplinary proceeding may result in the inmate's loss of good time credits, due process requires that the inmate receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Id. at 454 (citing Wolff, 418 U.S. at 563-67).

The United States Supreme Court has instructed lower courts that, when evaluating a disciplinary body's ultimate decision, due process is satisfied "if some evidence supports the decision by the prison disciplinary board to revoke good time credits." Id. at 455 (describing the evidence in the case as "meager," but nonetheless finding "some evidence" in the record to support the disciplinary board's decision). This "some evidence" standard is met if "'there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . .'" Id. (quoting United States ex rel. Vajtauer v. Comm'r of Immmigration, 273 U.S. 103, 106 (1927)). The Hill Court further emphasized that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. Though this standard is "minimally stringent," "there must be some indicia of reliability of the information that forms the basis for prison disciplinary actions." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). If the record is "so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," a due process violation has occurred. Hill, 472 U.S. at 457.

Based on its review of the record presented, this Court finds that Petitioner received the minimum procedural protections necessary under the Due Process Clause to ensure that prison officials did not arbitrarily deprive him of his credits. See Wolff, 418 U.S at 563-67; Hill, 472 U.S. at 454. While Petitioner contends that he was denied various procedural protections, Petitioner's objection is directed to the lack of notice that he would be transferred to a different facility,

which he considers to be an adverse classification decision, not the lack of notice of the RVR. See FAP at 7-8; Traverse Mem. at 1-3. Petitioner claims he was not given seventy-two hours notice of the adverse housing classification decision announced to him on March 4, 2008, he was not present at the classification committee's hearing on his classification status (presuming there was one), and he was not provided with a copy of the written decision altering his classification status.[7] Traverse Mem. at 1. As the court of appeal correctly explained, the propriety of the transfer to another facility (and all its attendant procedural requirements) was not before the senior hearing officer and, thus, is not before any court considering his decision on habeas review. See Lodgment 7 at 2.

The only issue before this Court is whether the procedures employed with regard to the March 25, 2008 hearing comported with due process and this Court finds that they did. Petitioner does not claim anywhere in his briefing that he was deprived of proper notice of the disciplinary charges set forth in the RVR, an opportunity to call witnesses and present documentary evidence at the March 25, 2008 hearing, or a copy of the written decision issued by the senior hearing officer. See Wolff, 418 U.S at 563-67; Hill, 472 U.S. at 454. To the contrary, he acknowledges in his FAP that he was given a copy of the RVR while he was in administrative segregation (FAP at 6) and he attached a copy of the RVR (which included the hearing report) to his original federal habeas petition (Doc. No. 1). The senior hearing officer also noted that "[i]nmate BURNETT acknowledged receipt of this CDC-115 RVR and the following associated documents, CDC-115A; CDC-115 Part-C; Investigative Employee's Report more than 24 hours prior to the hearing" and  that Petitioner's "housing status did preclude his gathering of evidence, additional information was not necessary for a fair hearing." Lodgment 2 at 2. Petitioner has not objected to these assertions and the Court finds no evidence in the record indicating that Petitioner did not receive timely notice of the disciplinary charges, that he sought to present witnesses or evidence and was improperly denied the opportunity to do so, or that

---

[7] In arguing that he was entitled to these procedural protections, Petitioner again relies upon California law. As previously noted, this Court cannot grant federal habeas relief for errors in the application of state law. Estelle, 502 U.S. at 67; Matylinsky, 577 F.3d at 1094 n.4.

he did not receive a copy of the senior hearing officer's decision. As such, the Court finds that Petitioner's claim that he was not afforded the procedural protections afforded by <u>Wolff</u> fails. <u>See</u> <u>Wolff</u>, 418 U.S at 563-67; <u>Hill</u>, 472 U.S. at 454.

Whether the senior hearing officer's ultimate decision satisfied the strictures of due process presents a closer question. Under <u>Hill</u>, there is no due process violation as long as "some evidence" supports the decision revoking good time credits. <u>Hill</u>, 472 U.S. at 455. Here, the senior hearing officer relied entirely upon Sergeant Trujillo's statement that Petitioner refused to comply with the transfer. Lodgment 2 at 2. In applying the <u>Hill</u> standard, the Ninth Circuit has on at least one occasion found a reporting officer's testimony sufficient in and of itself to support a disciplinary conviction, <u>see</u> <u>Bostic v. Carlson</u>, 884 F.2d 1267, 1271 (9th Cir. 1989) ("[t]he reporting officer's testimony constituted sufficient evidence to support the finding of guilty") (relying on <u>Zimmerlee v. Keeney</u>, 831 F.2d 183, 186 (9th Cir. 1987) (holding that a disciplinary committee may rely on a confidential inmate informant's statement if it is supported by the oath of the investigating officer)), but the court also has required that the factual information relied upon have "some indicia of reliability," <u>Cato</u>, 824 F.2d at 705.

As a result, the Court must determine whether Sergeant Trujillo's written report and statement made during the hearing have some indicia of reliability. The RVR does not indicate that any other correctional officer witnessed Petitioner's refusal to comply with the transfer order. <u>See</u> Lodgment 2. At the hearing, the only person who testified aside from Sergeant Trujillo was Lieutenant Granish, who explained in response to the senior hearing officer's inquiry about why Petitioner was being rehoused, that Petitioner had requested the move to get away from Sergeant Trujillo and three other officers. Lodgment 2 at 2. While it initially seems implausible that Petitioner would request a move and then refuse the offered move, there are scenarios in which that conduct would make sense. For example, if Petitioner wanted to move to Facility X because he thought it was an improvement over where he currently was housed but subsequently was ordered to move to Facility Y, which he viewed as a less desirable facility, Petitioner might refuse the move, even though he originally requested it. Similarly, if Petitioner requested a move but did not want to move until after a certain date or event occurred (such

as graduation from a training program), Petitioner might refuse an earlier move. Another reliability consideration is that Petitioner apparently has filed harassment allegations against Sergeant Trujillo, which arguably could impact the credibility of both individuals. See id. (Lieutenant Granish's statement during the hearing). However, it is the not the responsibility of this Court to assess credibility and weigh evidence. Hill, 472 U.S. at 455-56.

Here, Petitioner's version and the contradictory statements were presented to the senior hearing officer, who heard and considered all of the evidence and testimony, assessed credibility, weighed the evidence, and determined that Sergeant Trujillo's version was the correct one. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Id. at 457. Under Hill, a due process violation may be found only if the senior hearing officer's findings were entirely "without support" or "arbitrary" and, on the evidentiary record presented, the Court finds that was not the case here. The requisite "some evidence" with "some indicia of reliability" was provided by Sergeant Trujillo's statement and report. Accordingly, this Court concludes that the court of appeal's decision affirming the disciplinary conviction was neither an unreasonable application of Hill nor an objectively unreasonable determination of the facts. 28 U.S.C. § 2254(d).

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that judgment be entered denying the petition.

**IT IS ORDERED** that no later than **June 25, 2010**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

///
///
///
///
///

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later that **July 16, 2010**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

DATED: June 3, 2010

*Barbara L. Major* (signature)

BARBARA L. MAJOR
United States Magistrate Judge